**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DAVID L. CARLTON,                           *

Plaintiff,                                  *

v.                                          *            Civil Action No. JRR-24-0514

SHANE WEBER, Warden, et al.,                *

Defendants.                                 *
                                          ***

<u>**MEMORANDUM OPINION**</u>

Plaintiff David L. Carlton, currently incarcerated at Western Correctional Institution ("WCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants have caused delays and denials of his necessary medical treatment.  ECF No. 1. The operative pleadings are the Amended Complaint and Supplement to the Amended Complaint.  ECF Nos. 14, 15.

Defendants Weber, Cartwright, Jenkins, and Woolford ("DPSCS Defendants") filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  ECF No. 46. Carlton was granted an extension to respond to the Motion, but has not done so in the time provided.  ECF No. 77.  The Court has reviewed the pleadings and papers, and finds a hearing unnecessary.  *See* Local Rule 105.6 (D. Md. 2025).  For the reasons stated below, DPSCS Defendants' Motion, construed as a Motion for Summary Judgment, will be granted.

In addition, DPSCS Defendants' Motion to Seal, ECF No. 48, will be denied.  The Motions to Stay filed by Bartles, Berger, Ernst, Getachew, and Tesfaye will be denied. ECF Nos. 71, 72. Carlton's Motion for Extension of Time to File Responses to the dispositive motions filed by Defendants Dereje Tesfaye (ECF No. 50), Bartles, Berger, Ernst, and Getachew (ECF No. 62), and Kathuria (ECF No. 67) will be granted.  ECF No. 76.

## I. BACKGROUND

### A. Plaintiff's Allegations

Carlton's allegations against DPSCS Defendants are based on their handling of complaints and grievances he filed pertaining to the alleged delay and denial of medical care. ECF 14 at 16-18. He complains specifically that since June 8, 2020, he has not received adequate medical care for Dupuytren Contracture disease, and this has left him unable to properly use his left hand and left foot. *Id.* 7-14. Carlton further complains that since March 14, 2019, he has not received proper medical care for pain and bone fragments in his right elbow. *Id.* at 14-15. Carlton also complains that, although he should be receiving chronic care for his diagnosis of Hepatitis C, he is not. *Id.* at 15-16.

Carlton's Supplement to the Amended Complaint includes exhibits that relate to his use of the grievance process. ECF No. 15. On September 22, 2021, Carlton filed his first Request for Administrative Remedy ("ARP") number 1698-21. *Id.* at 16; ECF No. 15-14 at 2-5. In the ARP, Carlton provides detailed information about his efforts to obtain medical treatment, described below.

Carlton states that since July 8, 2020, he has been requesting medical treatment for his left hand and left foot to no avail. *Id.* at 4. In the ARP, Carlton provides the details of his efforts to obtain medical care for his left hand and left foot. He states that he submitted a sick call slip on June 8, 2020, to request care on his left hand because his ring finger and pinky were "folding into" his hand and he had two lumps on the inside of his hand. *Id.* One month later, on July 8, 2020, he was seen by RN Hoenicka, who referred him to Dr. Getachew who then scheduled an x-ray for July 9, 2020. *Id.* Having received no follow up, on August 2, 2020, Carlton submitted a second sick call slip advising the medical department of his ongoing problem with his left hand and that

he was experiencing pain. *Id.* On August 10, 2020, he was again seen by RN Hoenicka. *Id.* On August 27, 2020, he was seen by Dr. Mohammed for chronic care of Hepatitis C who advised Carlton that a consultation request had been submitted for him to be seen by a hand surgeon. *Id.* On November 27, 2020, Carlton again requested sick call because he still had no treatment plan or pain medication. *Id.* Carlton did not receive a response to his sick call request. *Id.*

On January 16, 2021, Carlton submitted another sick call slip complaining that his pinky finger was curled into his palm, and was very painful. *Id.* On January 19, 2021, Carlton was seen by RN Stair who recognized that his hand had deteriorated, that medications needed to be renewed, and that there was no resolution of the surgery request. *Id.* On February 8, 2021, Carlton was evaluated in chronic care by Dr. O'Neil who agreed that he needed a referral to an orthopedic surgeon. *Id.* On April 7, 2021, Carlton submitted another sick call slip again stating that his pinky continues to curl into his palm and the pain is getting worse in all his knuckles. *Id.* On April 15, 2021, he was again referred to a provider for treatment, evaluation, and an x-ray.

On June 19, 2021, Carlton was seen by NP Clark for chronic care; NP Clark generated another request for a consultation by a hand surgeon. *Id.* at 4-5. On June 22, 2021, x-rays were again taken. *Id.* at 5. On July 8, 2021, Carlton was seen by RN Booth for a sick call slip he had submitted. *Id.* Booth assessed that Carlton was at risk for injury and he was referred to the provider for follow up. *Id.* On July 18, 2021, Carlton was seen by NP Clark who advised him that the request to see the surgeon had been denied, and an appeal was submitted, which had also been denied. *Id.* On August 1, 2021, Corizon Health again denied a surgery request. *Id.*

In the ARP, Carlton requests to be provided with the "recommended treatment plan," a consultation with the orthopedic surgeon, physical therapy after surgery, monetary damages, and no retaliation for use of the grievance process. *Id.* On September 24, 2021, Defendant Cartwright,

ARP Coordinator, dismissed the ARP for "procedural reasons" as "not received within the established timeframe." ECF No. 14 at 17; ECF No. 15-14 at 2.

On October 28, 2021, Carlton filed his second ARP, number 1979-21, which included photos of his left hand pinky. ECF No. 14 at 17; ECF No. 15-14 at 6-15. In the ARP, Carlton states the medical department has continuously failed to treat his Dupuytren's Contracture. *Id.* He chronicles his requests for treatment dating back to July 8, 2020, and states this is an ongoing medical issue for which he seeks relief to include orthopedic treatment, surgery, and physical therapy. *Id.* at 6-9. On October 28, 2021, Cartwright denied this ARP as well, because it was "[p]reviously resolved; is repetitive; or has been previously addressed" through the ARP process, citing to the first filed ARP, number 1698-21. *Id.* at 6: ECF 14 at 17.

Carlton alleges that on November 22, 2021, he sent a letter to Defendant Warden Weber and included a copy of the first and second ARPS and photos of his left hand pinky bent and twisted. ECF No. 15-14 at 16-17; ECF No. 14 at 17. The letter, which is not dated, is addressed to "WARDEN/TO WHOM IT MAY CONCERN;" and is stamped as received on both December 3, 2021, and February 1, 2022, by the ARP/IGP unit. ECF No. 15-14 at 16-17. In this letter, Carlton states he is appealing his first ARP 1979-21 and provides the inventory numbers for both ARPS (0143703 and 0106664). *Id.* at 16. Carlton states there was no investigation on either ARP, both ARPs were timely filed, and he has an ongoing unresolved issue. *Id.* Weber did not respond to his letter. ECF No. 14 at 17.

On December 3, 2021, Carlton states that he appealed the ARP to the DPSCS HQ ARP Coordinator, Defendant Sergeant Jenkins, with the same letter sent to the Warden. *Id.*; ECF No. 15-14 at 16-17. Jenkins sent Carlton a memorandum dated December 3, 2021, stating that the letter will not be accepted for processing because "[w]e are unable to determine your intent." ECF 15-

14 at 18. The memorandum advises Carlton that if he intends to appeal a decision, he should use the appropriate appeal form for each ARP number, and include a copy of the original completed ARP request. *Id.* Included in the record is Carlton's appeal dated December 21, 2021, filed on a DPSCS form, with a receipt stamp from the ARP/IGP unit dated February 1, 2022. ECF No. 15-14 at 19-25. On February 1, 2022, Jenkins dismissed the appeal as untimely. ECF No. 14 at 17; ECF No. 15-14 at 19.

On March 6, 2022, Carlton filed a grievance with the Inmate Grievance Office ("IGO"). ECF No. 14 at 17; ECF No. 15-14 at 20-25. On April 29, 2022, Defendant Woolford, Deputy Director, Inmate Grievance Office ("IGO"), issued a dismissal referencing the first ARP (1979-21) as "wholly lacking in merit" because the complaint is against the medical staff employed by the private health care contractor and not against officials or employees of the Division of Correction or the Patuxent Institution. ECF No. 15-14 at 26. Woolford explains that the IGO cannot consider grievances against a private health care contractor or its employees, citing Md. CODE ANN., CORR. SERV. § 10-206(a). *Id.*; ECF No. 14 at 17.

In this action, Carlton seeks declaratory and injunctive relief pertaining to medical care and damages. ECF No. 14 at 21-22. On October 2, 2024, the Court dismissed Carlton's Fourteenth Amendment claims against the DPSCS Defendants, and determined that Eighth Amendment damage claims may proceed against them in their individual capacities and Eighth Amendment claims for declaratory and injunctive relief may proceed against them in their official capacities. ECF Nos. 17, 18.

### B. DPSCS Response

Defendant Warden Weber states that medical services at WCI are provided by a private medical contractor and neither he nor WCI officers have authority to issue medical orders

regarding an individual's medical care.  ECF No. 46-2 at ¶ 2 (Decl. Weber).  Weber is not a licensed health care provider.  *Id.*  Weber is also not responsible for supervising or monitoring the medical contractor or the medical department.  *Id.* at ¶ 3.  Weber relies on the reports, assessments, and judgment of the contractor's medical staff  to prepare a response to any ARPs for his signature. *Id.*  at ¶ 4.  Weber did not process either of Carlton's ARPS, and was not aware that Carlton had filed any ARPs pertaining to medical care.  *Id.* at ¶ 6.  An incarcerated individual can request sick call from the medical contractor and neither he nor correctional staff have "control" over the medical providers' response to a sick call request.  *Id.* at ¶ 8.

Defendant Cartwright, ARP Coordinator at WCI from January 2009 through August 21, 2022, similarly states that she is not a licensed health care provider and, when evaluating ARP appeals, she relies on the medical providers' reports, assessments, and judgments and does not make determinations as to the medical providers' response to a sick call slip.  ECF No. 46-3 at ¶¶ 3, 6, 7 (Decl. Cartwright).  Cartwright did not investigate either ARP filed by Carlton, as she procedurally dismissed Carlton's first filed ARP 1698-21 as untimely, and dismissed his second filed ARP 1979-21 as duplicative of the first ARP.  *Id.* at ¶¶  4-5.

Defendant Jenkins, ARP Coordinator in the office of the Commissioner of Correction (HQ) from November 2021 through February 2023, states it was her duty to process ARP appeals.  ECF No. 46-4 at ¶ 2 (Decl. Jenkins).  Similar to Defendants Weber and Cartwright, she is not a licensed health care provider and relies on the medical providers' reports, assessments, and judgments, and does not make determinations as to the medical providers' response to sick call slips.  *Id.* at ¶¶ 3, 12, 13.  If an ARP appeal complains about a procedural dismissal of an ARP, Jenkins determines if the procedural dismissal was correct.  *Id.* at ¶ 4.  Carlton's ARP 1979-21 had been dismissed as repetitive of his first filed ARP and Jenkins determined the appeal was "not clear."  *Id.* at ¶ 6.  On

December 3, 2021, Jenkins instructed Carlton to submit clarifying information, and Carlton "waited more than 30 days," and submitted the information on February 3, 2022. *Id.* Jenkins then dismissed the appeal as untimely. *Id.* Even if the information was timely submitted, Jenkins would have dismissed the appeal because the decision that it was repetitive was correct. *Id.* at ¶ 7. Cartwright did not file a separate appeal of the first ARP 1698-21. ¶ 8.

Defendant Woolford states that Carlton has filed only filed two medical care grievances with the IGO; case numbers 20220460 and 20220459. ECF No. 46-5 at ¶ 2 (Decl. Woolford). Carlton's grievance 20220459 related to Carlton's second filed ARP 1979-21. *Id.* at ¶ 3. Woolford dismissed the grievance because it did not pertain to any Division of Correction or Patuxent employees. *Id.* at ¶ 3. Woolford also dismissed grievance 2022060, based on his first filed grievance ARP 1698-21, for the same reason, although it also could have been dismissed because he failed to establish that he appealed the institution's response to the ARP to the Commissioner of Corrections. *Id.* at ¶ 4; ECF No. 46-5 at 67. Woolford is similarly not a licensed health care professional. *Id.* at ¶ 5.

Declarant Emerick, the administrative aide/litigation coordinator at WCI, states current duties to include screening and keeping a daily log of all incoming mail from incarcerated individuals and routing mail to appropriate departments to respond to the inquiry. ECF No. 46-6 at ¶ 2-3 (Decl. Emerick). Emerick states that the mail log for the Warden's Office documents that only one piece of correspondence came from Carlton from December 2021 through January 2022, and it was noted to be in reference to Carlton's request for permission to communicate with his brother who was incarcerated at another facility. *Id.* at ¶ 4. There is no record on the Warden's mail log regarding an appeal of any ARP by Carlton from July 2021 through April 2022. *Id.*

7

"Typically" any letter expressing an intent to appeal an ARP or referencing an ARP would be forwarded to the ARP Coordinator's Office to handle. *Id.* at ¶ 6.

## II. MOTION TO SEAL

DPSCS Defendants seek to seal portions of an exhibit submitted with their dispositive motion and submit 121 pages to seal. ECF Nos. 47-48. They request to seal records due to privacy concerns regarding Plaintiff's health information. ECF No. 48 at 1. Counsel states that the records filed under seal have already been redacted as to date of birth and age, but there is no alternative to sealing the records to protect the other medical information from disclosure and permit the Court and Plaintiff to see the evidence offered. *Id.* at 2.

The documents submitted for sealing include numerous pages already filed by counsel on the public record. *See*, e.g., ECF 47-1 at 68-92 (sealed) filed at ECF 46-5 at 26-50 (not under seal). Counsel has not designated only the records they request to seal, choosing instead to file a larger quantity than is necessary or useful to the Court in reviewing the motion to seal.

Local Rule 105.11 states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D. Md. 2023). The rule balances the public's general right to inspect and copy judicial records and documents, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access may be rebutted by demonstration that that "countervailing interests heavily outweigh the public interest in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Mag., Inc.*, 846

F.2d 249, 253 (4th Cir. 1988)). The right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id.* at 266 (quoting *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

The Court finds that in regard to the limited health records, not currently on the public docket, the less restrictive approach of limiting access to these filings to the case participants satisfies the need to maintain Carlton's privacy to his medical information. Accordingly, the Motion to Seal will be denied and the Clerk is directed to instead restrict the filing to case participants. The documents in the restricted filing that are already on the public docket may be viewed there.

### III. STANDARD OF REVIEW

#### A. Motion to Dismiss

DPSCS Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties

must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d); *Adams Hous., LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (*per curiam*).  As is the case here, when a movant titles its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the Court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5 C Wright & Miller, FEDERAL PRACTICE & PROC. § 1366, at 159 (3d ed. 2004, 2011 Supp.).  This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165, 167.

## B.  Discovery

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (*per curiam*); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d

214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  FED. R. CIV. P. 56(d); *see also Harrods Ltd.*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs. LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit … is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd.*, 302 F.3d at 244 (citations omitted).  Despite the absence of the non-moving party's Rule 56(d) affidavit, the Court shall not issue a summary judgment ruling that is obviously premature.  Although the Fourth Circuit places "'great weight'" on the Rule 56(d) affidavit, and holds that mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is

not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods Ltd.*, 302 F.3d at 244–45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Here, Carlton has neither responded to DPSCS Defendants' Motion nor made any request for discovery.

### C. Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)). The

Court "view[s] the evidence in the light most favorable to … the nonmovant, and draw[s] all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002); *see F.D.I.C. v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015); *In re French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644–45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact. *See Anderson*, 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Carlton is self-represented, his submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the Court must abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding

to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## IV. DISCUSSION

DPSCS Defendants seek dismissal of the Amended Complaint, or summary judgment in their favor, on the following grounds: Eleventh Amendment Immunity; failure to allege personal involvement; failure to state a Fourteenth Amendment claim; qualified immunity; and failure to exhaust administrative remedies for which he seeks injunctive relief.  ECF Nos. 46, 46-1. DPSCS Defendants also assert that the Court should deny injunctive relief.  *Id.*

As already discussed, on October 2, 2024, the Court dismissed Carlton's Fourteenth Amendment claims against the DPSCS Defendants, and permitted his Eighth Amendment damage claims to proceed against DPSCS Defendants in their individual capacities, and his Eighth Amendment claims for declaratory and injunctive relief to go forward against DPSCS Defendants in their official capacities.  ECF Nos. 17-18.  Accordingly, DPSCS Defendants' Eleventh Amendment immunity and Fourteenth Amendment arguments are unnecessarily presented and will not be addressed as they have already been resolved.

### A.  Eighth Amendment Damage Claims

DPSCS Defendants assert that Carlton fails to allege either personal involvement or supervisory liability which is a required element of a § 1983 action.  ECF No. 46-1 at 9-11.

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, deprives her "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt.*

*City Police Dep't v. Owens*, 575 U.S. 983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

There is no dispute of fact that Defendants Cartwright, Jenkins, and Woolford reviewed Carlton's filings pursuant to the ARP process and did not investigate his concerns, but instead dismissed his complaints for procedural reasons.  Cartwright and Jenkins based their dismissals on timeliness and repetition of complaints; Woolford based her dismissal on the Department of Corrections having no jurisdiction over private health care contractors.  ECF No. 15-14 at 2, 6, 26; ECF No. 14 at 17; ECF No. 46-5 at 3, 67.  There is also no dispute of fact that Cartwright and Jenkins are not licensed health care professionals, do not have responsibility for assuring that medical care is provided to prisoners, and do not oversee medical personnel.  *See generally*, Cartwright Decl., ECF No. 46-3; Jenkins Decl., ECF No. 46-4.  It is further undisputed that Woolford is not a licensed health care professional and has no ability to order any particular medical treatment.  ECF No. 46-5 at ¶ 5.

In view of the undisputed facts, Cartwright, Jenkins, and Woolford's limited role does not establish personal liability for unconstitutionally inadequate medical care.  None of these Defendants investigated Carlton's substantive complaints regarding his medical care or was otherwise involved with the provision of medical care.  *See Chukwurah v. Corizon Health Care,* No. CV PX-22-212, 2023 WL 4268556, at *6 (D. Md. June 29, 2023) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) (citing *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.")), *aff'd,* No.  23-6716, 2024 WL 1405885 (4th Cir. Apr. 2, 2024).

The Court turns next to Carlton's allegations against Warden Weber.  Officials like Warden Weber may be found liable if the plaintiff shows the official "acted personally in the deprivation

of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971)). *See also Kelly v. Miller*, No. CV ELH-20-2531, 2022 WL 2703827, at *22 (D. Md. July 12, 2022) citing *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (additional citations omitted) (receipt of letters by prison officials may be evidence of personal knowledge).

Carlton alleges in his verified complaint that on November 22, 2021, he sent a letter to Defendant Weber and included a copy of the first and second ARPS and photos of his left hand pinky bent and twisted. ECF No. 15-14 at 16-17; ECF No. 14 at 17. The copy of the letter and attachments, provided by Carlton, addressed to "WARDEN/TO WHOM IT MAY CONCERN," states that Carlton is appealing his second filed ARP, references the inventory numbers for both ARPs, and is stamped as received on December 3, 2021, and also on February 1, 2022, by the ARP/IGP unit. ECF No. 15-14 at 10-16.

It is undisputed that Warden Weber did not process either of Carlton's ARPs or was aware that Carlton had filed any ARPs pertaining to medical care. ECF No. 46-2 at ¶ 6. Emerick, the current administrative aide/litigation coordinator at WCI confirms without opposition by Carlton that there is no record on the Warden's mail log regarding any appeal of an ARP by Carlton from July 2021 through April 2022, which is during the time Carlton alleges he sent his letter to the Warden. ECF No. 46-6 at ¶ 2-3 (Decl. Emerick). Further, it is undisputed that any letter expressing an intent to appeal an ARP or referencing an ARP would have been forwarded to the ARP Coordinator's Office to handle. *Id.* at ¶ 6. Emerick asserts, without opposition by Carlton, that the mail log for the Warden's Office documents only one piece of correspondence came from Carlton from December 2021 through January 2022, and it was noted to be in reference to

17

Carlton's request for permission to communicate with his brother who was incarcerated at another facility. *Id.* at ¶ 4. This, too, is undisputed.

The undisputed record evidence is that Carlton's letter addressed to "WARDEN/TO WHOM IT MAY CONCERN" was processed as an appeal the ARP denial. This document is stamped as received on both December 3, 2021, and February 1, 2022, by the ARP/IGP unit. ECF No. 15-14 at 16-17. In this letter, Carlton states he is appealing his first ARP 1979-21 and provides the inventory numbers for both ARPS (0143703 and 0106664). *Id.* at 16; ECF No. 14 at 17. Jenkins, the ARP Coordinator, sent Carlton a Memorandum dated December 3, 2021, stating that the letter will not be accepted for processing because "[w]e are unable to determine your intent." ECF 15-14 at 18.

Federal Rule of Civil Procedure 56(c) places the burden on the party responding to a motion for summary judgment to show that a fact is genuinely disputed by "citing to particular parts of materials in the record [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c). On the record before the Court, there is no opposition to Weber's statement that he did not process either of Carlton's ARPs or was even aware that Carlton had filed any ARPs pertaining to medical care. ECF No. 46-2 at ¶ 6. Although Carlton states that he sent the letter/ARP appeal to the Warden, there is no evidence that the letter was received or reviewed by Weber of that Weber was in any way aware of Carlton's medical needs. Carlton has failed to generate a dispute of fact on these material matters. *See Robinson v. Priority Auto. Huntersville, Inc.,* 70 F.4th 776, 780 (4th Cir. 2023) (stating that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations" to succeed on summary judgment).

Further, as expressed above, Carlton fails to allege personal involvement of Warden Weber. In addition, although addressed by Defendants, Carlton does not allege Weber is responsible under a theory of supervisory liability. Indeed, Carlton makes no allegations to this effect.

Weber, Cartwright, Jenkins, and Woolford's motion for summary judgment will be granted as to Carlton's damage claims.[1]

### B. Eighth Amendment – Declaratory and Injunctive Relief

Carlton seeks a declaration that his rights have been violated under federal law, and an injunction ordering Defendant Weber and the Medical Defendants to provide him with access to an orthopedic specialist to be evaluated for his left hand, left foot contractures, and removal of fragments in his right elbow, to include any operations, braces, and physical therapy. ECF No. 21. Defendants assert that Weber is "not capable" of executing a Court order to this effect, ECF No. 46-1 at 16, and further that Carlton has failed to exhaust administrative remedies for medical treatment except as pertains to Dupuytren disease in his left hand. *Id.* at 17.

For the reasons expressed above, the damage claims against Defendant Weber are resolved in Weber's favor; and, similarly, for the reasons articulated above, Carlton's claims for declaratory and injunctive relief against Weber will be resolved in Weber's favor. Carlton's request for declaratory and injunctive relief remains pending against the medical providers.

### V.    PENDING MOTIONS

### A. Medical Defendants' Motion for a Stay

Defendants Dr. Dereje Tesfaye, Dr. Asresahegn Getachew, Dr. Michael Berger, Dr. Mandip Bartels, and Mignon Ernst filed two motions to stay this proceeding and a supplemental

---

[1]Accordingly, the court need not reach DPSCS Defendants' qualified immunity argument.

reply based on proceedings pending in the United States Bankruptcy Court for the Southern District of Texas in *In re Tehum Care Services, Inc.* (f/k/a Corizon Health, Inc.), Case No. 23-90086 (CML).  ECF Nos. 71, 72, and 78.  These Defendants state that the Bankruptcy Court held a hearing on YesCare's Motion to Enjoin on July 2, 2025, and a decision on the motion is forthcoming, which will determine if Carlton will be enjoined from further litigating this case against these Defendants who are former employees of YesCare.  *See* Bankruptcy Case, ECF No. 2266; 2332.  ECF No. 78 at 1.

Pursuant to the docket in the bankruptcy proceedings, on August 7, 2025, the Bankruptcy Court issued a decision on YesCare's Motion to Enjoin.  ECF No. 2160. The Bankruptcy Court Ordered, in part, that certain plaintiffs are enjoined from continuing to litigate against any expressly named released party.  *Id.*  The Bankruptcy Court specifically determined that Carlton is not a plaintiff enjoined from continuing to litigate his pending case in this Court against Defendants.  *Id.*, *see* Exhibit B.  Accordingly, Defendants' motions to stay will be denied and Carlton may continue to litigate this case against Dr. Dereje Tesfaye, Dr. Asresahegn Getachew, Dr. Michael Berger, Dr. Mandip Bartels, and Mignon Ernst.

### A.  Carlton's Motion for an Extension of Time

Carlton has filed a motion for an extension of time to respond to dispositive motions pending by Defendants Dr. Dereje Tesfaye (ECF No. 50), Dr. Asresahegn Getachew, Dr. Michael Berger, Dr. Mandip Bartels, Mignon Ernst (ECF No. 62), and Dr. Sudhir Kathuria (ECF No. 67). ECF No. 76.  Carlton's motion will be granted.  ECF No. 76.  Carlton will be provided 60 days from entry of this Memorandum Opinion and Order to respond to all three motions.

## VI.  CONCLUSION

For the foregoing reasons, DPSCS Defendants' Motion, construed as a Motion for Summary Judgment, will be granted and judgment is granted in movant Defendants' favor and against Plaintiff.  ECF No. 46.  The DPSCS Motion to Seal, ECF No. 48, will be denied, and the documents will instead be filed as restricted to the parties.  The Motions to Stay filed by Bartles, Berger, Ernst, Getachew, and Tesfaye will be denied. ECF Nos. 71, 72.  Carlton's Motion for Extension of Time to File Responses to the pending dispositive motions filed by Defendants Dereje Tesfaye, ECF No. 50, Bartles, Berger, Ernst, and Getachew, ECF No. 62, and Kathuria, ECF No. 67 will be granted.  ECF No. 76.

A separate Order follows.

/S/

_____
Julie R. Rubin
United States District Judge