## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAVID L. CARLTON,                          *

Plaintiff,                                 *

v.                                         *          Civil Action No. JRR-24-0514

ASRESAHEGAN GETACHEW, MD, et al.,          *

Defendants.                                *
                                          ***

## <u>MEMORANDUM OPINION</u>

Plaintiff David L. Carlton, currently incarcerated at Western Correctional Institution ("WCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging a delay and denial of medical care.  ECF No. 1.   The operative pleadings are the Amended Complaint and Supplement to the Amended Complaint.  ECF Nos. 14, 15.

Carlton's remaining claim is against medical providers alleging medical treatment was delayed and denied in violation of the Eighth Amendment to the United States Constitution.  *See* Memorandum Opinion and Order, ECF No. 17, 18.  Pending are three dispositive motions filed by medical providers.[1] Defendant Dr. Tesfaye filed a Motion to Dismiss or, in the Alternative, for Summary Judgment and Carlton filed a Response in Opposition.  ECF Nos. 50, 86.[2] Defendants Drs. Bartles, Berger, Getachew, and RN Ernst[3] ("Medical Provider Group") filed a Motion to

---

[1]  Service has been attempted but not effectuated on Defendants Benhur Mohammed and Patrick O'Neil.  *See* ECF Nos. 60, 65, 70.  Further, the Court is unable to direct service on unidentified Defendants, namely, Unknown Utilization Management Staff, and Unknown, WCI Medical.

[2]  Carlton filed a motion for an extension of time to respond to Tesfaye's Motion, which shall be granted *nunc pro tunc*.  ECF No. 85.

[3]  Defendants have clarified that Defendant M. Ernst MD is Mignon Ernst, RN.  The Clerk will be directed to revise the docket accordingly.  ECF Nos. 14, 62, 62-1.

Dismiss or, in the Alternative, for Summary Judgment; Carlton filed a Response in Opposition; and Medical Provider Group filed a Reply. ECF Nos. 62, 87, 93.[4] Defendant Dr. Kathuria filed a Motion to Dismiss or, in the Alternative, for Summary Judgment; Carlton filed an Opposition in Response; and Kathuria filed a Reply. ECF Nos. 67, 90, 94.

The Court has reviewed the pleadings and papers, and finds a hearing unnecessary. Local Rule 105.6 (D. Md. 2025). For the reasons stated below, Tesfaye's Motion, construed as a motion for summary judgment, will be denied. The Medical Provider Group's Motion will be denied without prejudice. Kathuria's Motion, construed as a motion for summary judgment, will be granted. The Court will appoint counsel to represent Carlton.

In addition, on August 26, 2025, the Court issued a Memorandum Opinion and Order granting a Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a motion for summary judgment, on Carlton's claims against Defendants Weber, Cartwright, Jenkins, and Woolford (the Department of Public Safety and Correctional Services, or "DPSCS" Defendants). ECF Nos. 46, 79-80. Carlton filed a Motion for Reconsideration of the Order granting Defendant DPSCS's motion, ECF No. 82, which will be granted; and the Court reaffirms the Memorandum Opinion and Order dated August 26, 2025.

---

[4] Carlton filed a motion for an extension of time to file a sur-reply, ECF No. 95, to which the Medical Provider Group filed an opposition response, ECF No. 96, and Carlton also filed a motion for leave to file excess pages. ECF No. 98. As the dispositive motion will be denied, Carlton's motions will be denied as moot.

## I. BACKGROUND

### A.  Carlton's Allegations[5]

The Amended Complaint alleges that Defendants caused delays and denials of necessary medical treatment to Carlton.  ECF No. 14.  Specifically, Carlton complains that since June 8, 2020, he has not received adequate medical care for Dupuytren Contracture,[6] and this has left him unable to properly use his left hand and left foot. *Id.* 7-14.  Carlton further complains that since March 14, 2019, he has not received proper medical care for pain and bone fragments in his right elbow. *Id.* at 14-15.  Carlton also complains that, although he should be receiving care for his diagnosis of Hepatitis C, he is not.  *Id.* at 15-16.  Carlton seeks declaratory and injunctive relief, as well as monetary damages.  *Id.* at 21-22.

Carlton alleges that the Medical Provider Group, namely Dr. Getachew, Dr. Bartles, RN Ernst, and Dr. Burger, employed by Corizon and then YesCare, provided constitutionally inadequate medical care. ECF No. 14.  Carlton claims that Dr. Bartles and RN Ernst, both part of Utilization Management, denied off-site orthopedic consultations submitted by WCI medical staff. *Id.* at 5.  Carlton claims Dr. Getachew, the Regional Medical Director, was directly responsible for providing him with adequate medical care and failed to do so.  *Id.*  Carlton claims that Dr. Berger, onsite podiatrist, did not implement a plan of care or provide monthly follow up visits.  *Id.* at 14.

---

[5] Carlton's Amended Complaint is 23 pages long and contains detailed allegations about the medical care he received.  ECF No. 14.  Only the allegations relevant to the Court's opinion are included.

[6] Dupuytren contracture is an abnormal thickening of the skin in the palm of the hand at the base of the fingers. This thickened area may develop into a hard lump or thick band. Over time, it can cause one or more fingers to curl (contract), or pull sideways or in toward the palm.  The ring and little fingers are most commonly affected. In many cases, it affects both hands. Rarely, feet may also be affected.  https://www.hopkinsmedicine.org/health/conditions-and-diseases/dupuytrens-contracture (last checked 2/10/26).

Carlton alleges that Dr. Tesfaye was employed by Corizon, now YesCare, during the relevant time, directly responsible for his chronic care, was a Regional Medical Director, and part of the Utilization Management Staff, and failed to provide constitutionally adequate medical care. *Id.* at 5-6.

Carlton states that Defendant Dr. Kathuria is employed by an outside radiology service with a contractual relationship with Corizon, now YesCare, to provide service to individuals housed at WCI. *Id.* at 4. Carlton alleges that Dr. Kathuria failed to properly interpret x-rays of his left hand and right elbow. *Id.* at 4-5. On July 9, 2020, Dr. Kathuria interpreted x-rays that were taken of Carlton's left hand due to lumps in the palm of his hand. ECF No. 14 at 7. The x-ray report notes a history/complaint of left-hand pain. ECF No. 15-4 at 7. Dr. Kathuria found no evidence of an acute fracture, discoloration or subluxation, phalanges and carpal bones intact, alignment anatomical, and no acute osseous abnormality. *Id.*; ECF No. 14 at 7. On April 27 and June 22, 2021, additional x-rays were taken of the left hand. *Id.* at 9. The x-ray reports note a history/complaint of left hand pain and left hand 5th digit pain, respectively. ECF No. 15-4 at 24, 30. Dr. Kathuria interpreted both sets of x-rays with the same finding as his initial interpretation. *Id.*; ECF No. 15-4 at 24, 30.

Carlton further alleges that on April 27, 2021, Dr. Kathuria interpreted x-rays of his right elbow. ECF No. 14 at 15. The x-ray report notes a history/complaint of right elbow pain. ECF No. 15-7 at 7. Kathuria found no evidence of an acute fracture, dislocation, or subluxation, alignment anatomical, and no acute osseous abnormality. *Id.*; ECF No. 14 at 15. Carlton notes that Dr. Kathuria's report contrasts with an x-ray taken of his right elbow on August 30, 2019, and interpreted by Dr. Syed, which additionally included a finding that there were corticated fragments at the radial head and lateral epicondyle suggestive of prior injury. *Id.* at 14; ECF No. 15-7 at 5.

Carlton alleges that, as a result of receiving inadequate care, the Medical Provider Group, Dr. Tesfaye, and Dr. Kathuria, are responsible for his pain, deformity, permanent disability, and scarring. ECF No. 14.

### B. Defendants' Response[7]

<u>Dr. Tesfaye</u>

In a Declaration, Dr. Tesfaye states that at times relevant to Carlton's Amended Complaint he only provided treatment to inmates for chronic care conditions such as hypertension, diabetes, and hepatitis. ECF No. 50-2 at ¶ 4. Since 2022, Dr. Tesfaye has treated Carlton for hepatitis-C which was cured several years ago. *Id.* at ¶ 6. He has continued to provide follow up care to Carlton once yearly since that time. *Id.* At no time relevant to Carlton's Amended Complaint did Dr. Tesfaye serve as Regional Medical Director for WCI or ECI. *Id.* at ¶ 5. Dr. Tesfaye did not treat Carlton for Dupuytren Contracture disease, or his left hand, left foot, or right elbow. ECF No. 50-2 at ¶ 9.

<u>Dr. Kathuria</u>

In a Declaration, Dr. Kathuria attest that he is the owner of S & L Readings, LLC, which had a contract with Lakewood Healthcare Associates to review x-rays from Maryland Correctional Institutions, and that Lakewood had a contract with the correctional institution. ECF No. 67-2 at ¶¶ 4-5. Regarding interpretation of x-rays, the only information provided are the reasons for the study (as noted on the radiology report). *Id.* ¶ 9. As the radiologist, Dr. Kathuria does not have access to clinical records of the individual; nor does he order testing or treatment. *Id* at 1-2 ¶¶ 8,

---

[7] For the reasons that follow, the Medical Provider Group's motion will be denied without prejudice. For this reason, the allegations presented with their motion are not included in this section.

12. Dr. Kathuria also avers that x-rays are not used to diagnose Dupuytren's Contracture. *Id.* at ¶ 10.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Each of the dispositive motions is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d); *Adams Hous., LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (*per curiam*). As is the case here, when a movant titles its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the Court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings [] offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it[,] or simply not consider it." 5

C Wright & Miller, FEDERAL PRACTICE & PROC. § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

### B. Discovery

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (*per curiam*); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. FED. R. CIV. P. 56(d); *see also Harrods Ltd.*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs. LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied

"where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit … is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd.*, 302 F.3d at 244 (citations omitted). Despite the absence of the non-moving party's Rule 56(d) affidavit, however, the Court shall not issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit places "'great weight'" on the Rule 56(d) affidavit, and holds that mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods Ltd.*, 302 F.3d at 244–45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Here, Carlton has responded to the motions and, in response to both Dr. Tesfaye's motion and Dr. Kathuria's motion, has requested discovery. ECF Nos. 86-4; 90-4. Carlton's requests for discovery are addressed below.

### C. Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)). The Court "view[s] the evidence in the light most favorable to … the nonmovant, and draw[s] all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002); *see F.D.I.C. v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015); *In re French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644–45. Therefore, in the face of conflicting evidence, such as competing affidavits,

summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact. *Anderson*, 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Carlton is self-represented, his submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the Court must abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III.  ANALYSIS

#### A.  Medical Provider Group

The Medical Provider Group asserts that claims against them should be dismissed for failure to state a claim or alternatively that they are entitled to summary judgment because they were not deliberately indifferent to Carlton's medical needs. ECF No. 62-1. In support of their motion, the Medical Provider Group provides over 300 pages of Carlton's medical records, ECF

Nos. 62-3 – 62-11, and Declarations of Defendants Dr. Getachew, ECF No. 62-2; Dr. Bartels, ECF No. 62-12; Dr. Berger, ECF No. 62-13; and RN Ernst, ECF No. 62-14.

The Court has spent considerable time trying to make sense of the medical records provided by the Medical Provider Group. The records are docketed as nine separate filings of 34 to 35 pages, uniformly titled "Exhibit A-1," and unindexed.  ECF Nos. 62-3 – 62-11.  The four Declarations are also unindexed or labeled.  ECF Nos. 62-2, 62-12 – 62-14.  In his Declaration, Dr. Getachew references every medical document as Exhibit A-1, with the page number provided by the institutional medical records numbering system ("MR") noted at the bottom of each page of the medical documents. ECF No. 62-2.  This numbering system, provided without an index, requires the Court to search all nine docketed filings to determine the medical document being referenced. Under Local Rule 105.5 (D. Md. 2025) "[i]f any motion, memorandum, or brief is accompanied by more than five exhibits, the exhibits shall be tabbed and indexed."  The Medical Provider Group has not complied with the Local Rule.

The Court's task is further impeded and complicated by medical records provided that appear duplicated and out of order. *See*, iMR 105-139 located both at ECF No. 62-6 at 1-35 and ECF No. 62-7 at 1-35.  But certainly, more concerning and critical are the pages missing from the medical records that are heavily relied on by the Medical Provider Group in their Memorandum of Law and in the Declarations provided. Specifically, pages MR 140-174 appear not to have been filed at all and no medical records were filed after page number MR 314.  ECF No. 6-7 ending with MR 139, and ECF No. 6-8 starting with MR 175, representing 36 missing pages, and ECF No. 6-11 at 35, showing the last medical record provided, labeled MR 314.  The result is that the declarations cite multiple documents that were not provided, are not in the record, and cannot be reviewed by the Court or Carlton.  Getachew Declaration, ECF No. 62-2 at 13-19, 23-24; Bartel

Declaration (citing Getachew Declaration and MR record numbers, ECF No. 62-12); Berger Declaration, ECF No. 62-13 (citing Getachew Declaration and MR record numbers); and Ernst Declaration, ECF No. 62-14 (citing Getachew Declaration and MR record numbers).

The Court's concerns continue. The Medical Provider Group relies heavily on the activities of the YesCare Utilization Management ("UM") Committee; and yet it appears it failed to provide these documents to the Court. Memorandum of Law, ECF No. 62-1. Carlton filed a Supplement to the Amended Complaint, which includes portions of his UM medical records, ECF No. 15-5, but the Court cannot determine if Carlton's submission is complete regarding UM activities. The Court also cannot determine if Carlton's submission contains any of the missing records cited by the Medical Provider Group. *See* ECF Nos. 15-5.

The Court cannot reconcile the record and has spent considerable judicial resources in an effort to do so. This is an undue burden on the Court and Carlson. The motion will be denied without prejudice. ECF No. 62.

### B. Defendant Dr. Tesfaye

Dr. Tesfaye asserts that claims against him should be dismissed for failure to state a claim or, alternatively, he is entitled to summary judgment because he was not deliberately indifferent to Carlton's medical needs; his medical malpractice claim should be dismissed for failure to satisfy state law requirements; and qualified immunity bars the claim. ECF No. 50-1.

Dr. Tesfaye argues that Carlton has merely alleged, without providing evidence, that he provided general medical services to inmates, was a Regional Medical Director, and was part of the Utilization Management staff. ECF No. 50-1 at 3. Then, relying solely on his Declaration without reference to medical records, Dr. Tesfaye asserts there is no genuine dispute of material fact that he did not treat Carlton for Dupuytren Disease, and at no time relevant to Carlton's

Amended Complaint did he serve as Regional Medical Director for WCI or ECI.[8]  *Id.* at 3, 6; ECF No. 50-2 at ¶¶ 5, 8.  Dr. Tesfaye does not state whether he served on the Utilization Management committee.  *See id.*

Counter to Dr. Tesfaye's assertions, Carlton alleged in his Amended Complaint that Tesfaye was a Regional Medical Director and part of UM staff during the relevant time period. ECF No. 14 ¶ 14.  Additionally, in his Supplement to the Amended Complaint, Carlton provided medical records that contradict Tesfaye's assertions.  For example, medical records document that on August 1, 2021, Tesfaye appears to have been notified that an alternative treatment plan ("ATP"), rather than an orthopedic consult, be provided.  *See* ECF No. 15-5 at 2.  The entry includes Tesfaye's name and states "RMD" (Regional Medical Director) Determination and appears to be at the direction of the Utilization Management Committee (noting Drs. Ernst and Bartles).  *Id.* Carlton provided an additional medical record that seems to provide similar information.  ECF No. 86-5 at 2.  Further, medical records Carlton provided document that on April 8, 2022, Carlton was seen by Dr. Mehta for a left planter contracture referral that interferes with his activities of daily living ("ADL"); the condition was noted to be "chronic"; and it was ordered that Carlton should be scheduled for the chronic care clinic.  ECF No. 15-4 at 54-55.  On August 2, 2022, Carlton had a chronic care visit and included on the list of chronic medical problems was Dupuytren's Contracture on his left hand.  ECF No. 15-11 at 5.  The medical provider for this appointment was noted to be Dr. Tesfaye.  *Id.* at 7.  Dr. Tesfaye does not address

---

[8]  Dr. Tesfaye does not provide any medical records. Instead, he relies on Carlton's allegations in his Amended Complaint, documents provided by Carlton in the Supplement to the Amended Complaint, and his own Declaration.  ECF Nos. 50-1, 50-2. Dr. Tesfaye states that he reserves the right to file a subsequent motion for summary judgment based on Carlton's medical records if the Court does not grant this motion and dismiss him from the lawsuit.  ECF No. 50-1 at 15 n. 4.

the medical records previously provided by Carlton and contradict his declaration regarding involvement in Carlton's care.

The Court finds that material facts are in genuine dispute that preclude summary judgment in favor of Dr. Tesfaye. Dr. Tesfaye's motion will be denied.[9]   Further, as the motion will be denied, Carlton's discovery request will be denied without prejudice to renew.  ECF No. 90-4.

### C.  Dr. Kathuria

Dr. Kathuria asserts that Carlton has failed to state a claim against him; alternatively, he asserts he is entitled to summary judgment because he was not deliberately indifferent to Carlton's medical needs. ECF Nos. 67, 67-1.

Carlton alleges, both in his Amended Complaint and in response to the motion, that Dr. Kathuria issued incorrect x-ray findings, which caused him to suffer delay in receiving medical treatment.  ECF No. 14 at 4-5, 14-15; ECF No. 90-3.  Carlton asserts that other medical providers made visual findings that contradict the x-ray reports, and another physician interpreted an earlier x-ray of Carlton's elbow with additional findings.  ECF No. 90-3 at 5.  Dr. Kathuria counters that he was not charged with providing treatment or making clinical decisions, and his limited role in reviewing and interpreting radiological images cannot establish that he was deliberately indifferent to Carlton's medical needs.  ECF No. 67-2 at ¶¶  12; ECF No. 67-1.  In his Declaration, Dr. Kathuria avers that when he interprets an x-ray the only information he receives is the indication for the study, as noted on the radiology report.  ECF No. 67-2 at ¶  12.  The indications for the

---

[9]  The Court will not address Dr. Tesfaye's argument regarding a state law claim of medical malpractice, as the Court has construed Carlson's claim solely as based on the Eighth Amendment. ECF Nos. 17-18.  As for Dr. Tesfaye's argument pertaining to qualified immunity, the material facts pertaining to Dr. Tesfaye's involvement in Carlton's medical care are clearly in dispute; such a determination is premature. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

three x-rays he interpreted were noted to be left hand pain; right elbow and left hand pain; and lefthand 5th digit. *Id.* at ¶ 11. In interpreting the x-rays, Dr. Kathuria did not observe a "serious medical condition." *Id.* at ¶ 13.

Carlton responded to the motion and included a declaration asserting that he needs discovery to dispute the motion for summary judgment. ECF No. 90; ECF No. 90-4. Carlton specifically seeks the x-ray films taken of his elbow and hand; depositions of Dr. Syed who interpreted the earlier of two x-rays of his elbow; and nurses Clark and Swan who can testify as to the discrepancies between the x-ray reports and medical reports. *Id.*

Carlton's request for discovery and the analysis of the summary judgment motion both turn on the elements of an Eighth Amendment claim for denial of medical care. The question here is whether incorrect x-ray reports are sufficient to state an Eighth Amendment claim in the provision of medical care.

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amount to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff suffered from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure it was available. *Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson*

15

*v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839, 840; *Anderson*, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus

must be on precautions actually taken in light of suicide risk, not those that could have been taken)); *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). Further, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Carlton seeks discovery to support his claim that Dr. Kathuria misread the x-rays. ECF No. 90-4. A misreading of an x-ray report alone, however, does not establish deliberate indifference. *Pevia v. Syed*, No. CV SAG-22-837, 2022 WL 4225478, at *2 (D. Md. Sept. 13, 2022) (dismissing prisoner civil rights complaint against radiologist who provided an incorrect diagnosis) citing *Carrera v. California*, 2008 WL 3931182 *10 (C.D. CA 2008) (dismissing prisoner civil rights complaint against radiologist who misread x-ray). *See Gibbs v. Wexford Health Sources, Inc.,* No. 2:20-CV-00867, 2021 WL 5986995, at *13 (S.D.W. Va. Sept. 14, 2021) *report and recommendation adopted*, No. 2:20-CV-00867, 2021 WL 5451775 (S.D.W. Va. Nov. 22, 2021), *aff'd*, No. 21-7667, 2022 WL 604052 (4th Cir. Mar. 1, 2022) (assertions that medical staff misidentified a finding on an X-ray did not allow for a conclusion that medical staff was aware of and disregarded a serious risk to his health).

Even assuming that Carlton can establish that Dr. Kathuria's x-ray report contained incomplete or incorrect information, without more, Carlton does not meet the subjective standard of a deliberate indifference claim. Carlton has not alleged that Dr. Kathuria had actual knowledge of his serious medical condition and the excessive risk posed by his action or inaction. *See Jackson*, 775 F.3d 170, 178 (4th Cir. 2014). Carlton's request for discovery will be denied because

17

the discovery he requests will not lead to evidence that supports his claim that Dr. Kathuria acted with deliberate indifference to a serious medical need.

Similarly, the record lacks sufficient allegations that Dr. Kathuria read the x-rays with a conscious disregard of an excessive risk to Carlton's health, or that he was aware of the need for medical attention and failed to ensure its availability.  Even if Carlton can establish that Dr. Kathuria misread his x-rays, this, alone, fails to state a claim of deliberate indifference. Dr. Kathuria's motion, construed as a motion for summary judgment, will be granted.

## IV.  MOTION FOR RECONSIDERATION

On August 26, 2025, the Court issued a Memorandum Opinion and Order granting the DPSCS Defendants' dispositive motion, construed as a motion for summary judgment, and Carlton's claims against the DPSCS Defendants were dismissed.  ECF Nos. 46, 79-80.   The Court's Memorandum Opinion notes that Carlton had not responded to the motion.  ECF No. 79 at 1.  The Court had previously granted Carlton an extension of time to respond to the motion, and the final extension expired on July 28, 2025.  ECF No. 77.

On August 29, 2025, three days after issuing its Memorandum Opinion and Order dismissing the claims, the Court received Carlton's response to the DPSCS motion, which was docketed as correspondence, as the motion had already been resolved.  ECF No. 81.  On September 12, 2025, the Court received Carlton's Motion for Reconsideration of the Court's Order. ECF No. 82.  In his motion, Carlton states that on July 23, 2025, he signed his response to the DPSCS motion and on July 26, 2025, he placed his response to motion in the hands of prison officials for mailing. *Id.* at 1; *see also* ECF No. 81-1 at 27 (same).  Carlton asserts that it is beyond his control that the response was not timely received by the Court.  ECF No. 82. Carlton includes with his motion the Declaration of DPSCS employee Michael Conley who attests that on July 26, 2025, he

accepted Carlton's legal mail, and that neither he nor Carlton have control over when the mail leaves Western Correctional Institution.  ECF No. 82-1; *see also* ECF No. 81-1 at 27.  DPSCS Defendants have not responded to Carlton's motion.

The prison mailbox rule governs pleadings filed by a prisoner litigant who uses the prison mail system to send pleadings to the Court.  Under this rule, a document is deemed filed the date it was delivered to prison officials for mailing.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding the pro-se prisoner "filed his notice within the requisite 30-day period when ... he delivered the notice to prison authorities for forwarding to the District Court). Here, Carlton has provided his verified motion accompanied by a prison employee's declaration supporting that the response to the motion was timely filed.

The Federal Rules of Civil Procedure do not contain an express provision for a "motion for reconsideration" of a final judgment. *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir.), *cert. denied*, 132 S. Ct. 115 (2011). But, to avoid elevating form over substance, a motion to reconsider may be construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e), or a motion for relief from judgment under Fed. R. Civ. P. 60(b). *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 278-80 (4th Cir. 2008). Because the motion was filed within 28 days of the Court's judgment, Rule 59(e) controls.  *Bolden v. McCabe, Weisberg & Conway, LLC*, No. DKC-13-1265, 2014 WL 994066, at *1 n.1 (D. Md. Mar. 13, 2014); *see also* Fed. R. Civ. P. 59(e) (stating that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment").

"Federal Rule of Civil Procedure 59(e) permits the district court to reconsider a decision in certain circumstances." *Ross v. Early*, 899 F. Supp. 2d 415, 420 (D. Md. 2012) (citing Fed. R. Civ. P. 56(e)), *aff'd*, 746 F.3d 546 (4th Cir. 2014). But, the plain language of Rule 59(e) does not

provide a particular standard by which a district court should evaluate a motion to alter or amend judgment. However, the Fourth Circuit has clarified: "Our case law makes clear, however, that Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (internal quotations omitted); *see also United States ex rel. Carter v. Halliburton Co.*, 866 F. 3d 199, 210-11 (4th Cir. 2017), *cert. denied*, 2018 WL 587746 (June 25, 2018). "'[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) citing 11 Wright et al., *Federal Practice and Procedure* § 2810.1, at 124 (2d ed. 1995).

Carlton's response to DPSCS's motion was timely filed under the prison mailbox rule. It would be unjust, and contrary to law, to hold Carlton responsible for mail delays that are beyond his control. The motion for reconsideration will be granted and his response will be considered by the Court in ruling on DPSCS's motion. For the reasons that follow, the Court reaffirms the Memorandum Opinion and Order previously issued.

In the Opinion, the Court granted DPSCS's motion, construed as a motion for summary judgment, stating the following:

> In view of the undisputed facts, Cartwright, Jenkins, and Woolford's limited role does not establish personal liability for unconstitutionally inadequate medical care. None of these Defendants investigated Carlton's substantive complaints regarding his medical care or was otherwise involved with the provision of medical care. *See Chukwurah v. Corizon Health Care*, No. CV PX-22-212, 2023 WL 4268556, at *6 (D. Md. June 29, 2023) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) (citing *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.")), *aff'd*, No. 23-6716, 2024 WL 1405885 (4th Cir. Apr. 2, 2024).

20

The Court turns next to Carlton's allegations against Warden Weber. Officials like Warden Weber may be found liable if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971)). *See also Kelly v. Miller*, No. CV ELH-20-2531, 2022 WL 2703827, at *22 (D. Md. July 12, 2022) citing *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (additional citations omitted) (receipt of letters by prison officials may be evidence of personal knowledge).

Carlton alleges in his verified complaint that on November 22, 2021, he sent a letter to Defendant Weber and included a copy of the first and second ARPS and photos of his left-hand pinky bent and twisted. ECF No. 15-14 at 16-17; ECF No. 14 at 17. The copy of the letter and attachments, provided by Carlton, addressed to "WARDEN/TO WHOM IT MAY CONCERN," states that Carlton is appealing his second filed ARP, references the inventory numbers for both ARPs, and is stamped as received on December 3, 2021, and also on February 1, 2022, by the ARP/IGP unit. ECF No. 15-14 at 10-16.

It is undisputed that Warden Weber did not process either of Carlton's ARPs or was aware that Carlton had filed any ARPs pertaining to medical care. ECF No. 46-2 at ¶ 6. Emerick, the current administrative aide/litigation coordinator at WCI confirms without opposition by Carlton that there is no record on the Warden's mail log regarding any appeal of an ARP by Carlton from July 2021 through April 2022, which is during the time Carlton alleges he sent his letter to the Warden. ECF No. 46-6 at ¶ 2-3 (Decl. Emerick). Further, it is undisputed that any letter expressing an intent to appeal an ARP or referencing an ARP would have been forwarded to the ARP Coordinator's Office to handle. *Id.* at ¶ 6. Emerick asserts, without opposition by Carlton, that the mail log for the Warden's Office documents only one piece of correspondence came from Carlton from December 2021 through January 2022, and it was noted to be in reference to Carlton's request for permission to communicate with his brother who was incarcerated at another facility. *Id.* at ¶ 4. This, too, is undisputed.

The undisputed record evidence is that Carlton's letter addressed to "WARDEN/TO WHOM IT MAY CONCERN" was processed as an appeal the ARP denial. This document is stamped as received on both December 3, 2021, and February 1, 2022, by the ARP/IGP unit. ECF No. 15-14 at 16-17. In this letter, Carlton states he is appealing his first ARP 1979-21 and provides the inventory numbers for both ARPS (0143703 and 0106664). *Id.* at 16; ECF No. 14 at 17. Jenkins, the ARP Coordinator, sent Carlton a Memorandum dated December 3, 2021, stating that the letter will not be accepted for processing because "[w]e are unable to determine your intent." ECF 15-14 at 18.

… Carlton fails to allege personal involvement of Warden Weber. In addition, although addressed by Defendants, Carlton does not allege Weber is responsible

under a theory of supervisory liability. Indeed, Carlton makes no allegations to this effect.

ECF No. 79 at 16-19.

The Court has reviewed Carlton's response to the motion.  In his response, Carlton does not provide evidence that there are material facts in genuine dispute that preclude summary judgment; rather, he argues that the law supports his claim and that summary judgment should be denied for that reason.

Carlton's response does not alter the analysis or conclusion in the Court's prior Memorandum Opinion and Order finding that Cartwright, Jenkins, and Woolford's limited role does not establish personal involvement for unconstitutionally inadequate medical care, and that Weber was not personally involved or responsible under a theory of supervisory liability.  This was the basis for the Court's decision.

The Court reaffirms its prior Memorandum Opinion and Order granting the DPSCS Defendants' dispositive motion, construed as a motion for summary judgment, and dismissing Carlton's claims against the DPSCS Defendants.  ECF Nos. 46, 79-80.

## V.  APPOINTMENT OF COUNSEL

As claims are proceeding against the Medical Provider Defendants and Dr. Tesfaye, the Court assesses Carlton's need for appointment of counsel.  [D]istrict courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so where the case of an indigent person presents exceptional circumstances." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted).  Exceptional circumstances exist if (1) plaintiff has a "colorable claim" and (2) considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it."  *Id.*  (citation and quotations omitted).

The Court determines that Carlton has presented exceptional circumstances. Carlton is presently incarcerated.  He seeks significant discovery regarding the responsibilities of medical providers for the delay in his receipt of what he alleges is necessary medical treatment for a serious medical illness.  Based on Carlton's filings to date, the nature of the claims, and the need for discovery, the Court determines that exceptional circumstances exist that warrant the appointment of an attorney to represent Carlton under 28 U.S.C. § 1915(e)(1).

## VI.  CONCLUSION

For the foregoing reasons, the Medical Provider Group's Motion will be denied without prejudice.  Carlton's motions for an extension to file an opposition response and to file excess pages to that motion will be denied as moot.  Carlton's motion for an extension of time to respond to Tesfaye's Motion shall be granted *nunc pro tunc*.  Dr. Tesfaye's Motion, construed as a Motion for Summary Judgment, will be denied.  Carlton's request for discovery pertaining to Dr. Tesfaye will be denied without prejudice.  The Medical Group Providers and Dr. Tesfaye will be directed to answer the Amended Complaint and Supplement to the Amended Complaint.  Dr. Kathuria's Motion, construed as a motion for summary judgment, will be granted, and Carlton's related request for discovery will be denied.

Carlton's Motion to Reconsider the Court's August 26, 2025 Order, granting Defendant DPSCS's Motion to Dismiss or for Summary Judgment, will be granted. The Court, however, reaffirms the Memorandum Opinion and Order dated August 26, 2025.

Carlton will be appointed counsel who may renew motions for discovery and complete service on remaining defendants.  A separate Order follows.

February 10, 2026

/S/
_____
Julie R. Rubin
United States District Judge